IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RICHARD HOEFT,

                      Plaintiff,                     ORDER

   v.

REED RICHARDSON and                           09-cv-115-bbc
CAPTAIN MICHAEL KASTEN,

                      Defendants.

---

      Before the court in this civil rights lawsuit are the parties' dueling motions about how and where to depose plaintiff Richard Hoeft, who is representing himself. *See* dkt. 8 (defendants' motion to compel an in-person deposition in Madison) and dkt. 11 (plaintiff's motion to appear telephonically for his deposition). This is the first volley in what could escalate into a multi-front discovery war between Hoeft and the state attorney general's office.[1] To forestall this possibility I am taking a global approach to pretrial discovery in Hoeft's pending lawsuits against state actors.

      According to defendants, on August 5, 2009, they sent Hoeft a notice of videotaped deposition in this lawsuit to take place on September 11, 2009 in Madison, Wisconsin, at the offices of the assistant attorney generals defending the state in this case. On September 9, 2009, the assistant attorney general defending this lawsuit received a letter from Hoeft stating that he was unavailable on September 11 because of a dentist's appointment and that in any event, he

---

[1] Upon his release from state custody, plaintiff bombarded the state with pro se lawsuits, eight of which are proceeding at this time (09-cv-114, 115, 116, 117, 118, 120, 121 and 138), two of which have been dismissed (09-cv-119 & 120). Between 2005 and 2008, Hoeft filed nine other lawsuits in this court and did not win any. (*See* 05-cv-24, 05-cv-328, 05-cv-333, 05-cv-351, 06-cv-16, 08-cv-259, 08-cv-269, 08-cv-537 and 08-cv-674). More on this below.

would only appear by telephone for a deposition. Defendants' attorneys e-mailed back that they would reschedule to September 17, 2009 and that they would not agree to a telephonic deposition. Hoeft replied with a rude and caustic e-mail to the effect that he had a right under Rule 30(b)(4) to be deposed telephonically because it's a seven-hour one-way drive from his home in Park Falls to Madison using unreliable transportation, this was an unacceptable burden on him, that he would not be forced by inconvenience into abandoning his lawsuit, and that if the defendant's attorney threatened him again, Hoeft would have a restraining order put out on her. *See* dkt. 8.

In Hoeft's counter-motion (dkt. 8) and his responsive brief (dkt. 12), Hoeft complains that he has no reliable transportation to Madison, the trip, at over seven hours, is too long[2] and that the state is insisting on his personal appearance "to make it miserable for me so that I'll dismiss the suit. That won't happen." Dkt. 12 at 2.

For background, here is a thumbnail sketch of Hoeft's civil lawsuits in this court:

In Case No. 05-cv-24, this court granted summary judgment against Hoeft on his claim that defendant law enforcement officers had unlawfully searched his car for burglary tools.

In Case No. 05-cv-328, this court granted summary judgment against Hoeft on his claim that he had received deficient medical care while detained at the Dane County Jail for eight weeks, finding that jail staff immediately responded to all of Hoeft's complaints.

In Case No. 05-cv-333, the court dismissed Hoeft's lawsuit without prejudice. Hoeft appealed and lost. The court's CM/ECF docket sheet does not provide the underlying facts.

---

[2] As the state points out, Park Falls is about 250 miles north of Madison and the drive actually takes about 4½ hours, most of it on I-39.

In Case No. 06-cv-16, the court dismissed Hoeft's complaint with prejudice 3½ months after he filed it, denying his request for a continuance. The court's CM/ECF docket sheet does not provide the underlying facts.

In Case No. 08-cv-259, the court dismissed without prejudice Hoeft's multimillion dollar claim of interrogation brutality by law enforcement officers because Hoeft claimed he was unable to pay the initial partial filing fee of $57.60 calculated by the court.

In Case No. 08-cv-269, the court dismissed without Hoeft's multimillion dollar prison dental care claim because Hoeft did not pay the $76.77 initial partial filing fee calculated by the court.

Case No. 08-cv-537 was Hoeft's 15-claim petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 which the court denied.

In Case No. 08-cv-674, Hoeft originally filed his prison medical treatment claim (based on Hoeft's carpal tunnel syndrome) in Sawyer County Circuit Court; the state removed it to this court. On September 15, 2009, this court granted summary judgment against Hoeft, declaring that no reasonable jury could find that defendants' treatment of Hoeft amounted to deliberate indifference.

In Case No. 09-cv-114, Hoeft claims an eighth amendment violation based on the failure to provide him with a partial denture while he was at Stanley Correctional Institution. The court granted him leave to proceed on this claim.

In Case No. 09-cv-115 (this case), petitioner alleges that officials at the Stanley Correctional Institution declined for a month to provide him with braces he needed to allay the pain of his carpal tunnel syndrom.

3

In Case No. 09-cv-116, the court reluctantly–*see* March 19, 2009 Order, dkt. 3, at 4–granted Hoeft leave to proceed on his claim that his eighth amendment rights had been violated at Stanley Correctional Institution when his request to move from the noisier unit to the quieter unit was denied.

In Case No. 09-cv-117, Hoeft alleged that the warden and nurse at Flambeau Correctional Center ignored his serious dental needs.  The court granted him leave to proceed.

In Case No. 09-cv-118, Hoeft claims that a correctional officer at Flambeau Correctional Center beat him up him after he reported the officer for killing animals in the garden.  The court granted Hoeft leave to proceed on this claim.

In Case No. 09-cv-119, the court denied Hoeft leave to proceed on his fifth amendment and due process claims regarding an interrogation by law enforcement because the claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  On September 2, 2009, the Court of Appeals for the Seventh Circuit dismissed Hoeft's appeal because he did not timely pay the required docketing fee.

In Case No. 09-cv-120, the court also denied Hoeft leave to proceed on a claim similar to that raised in 119, *supra*, and the Seventh Circuit also dismissed this appeal for failure to pay the docketing feel.

In Case No. 09-cv-121, Hoeft sued a group of officers at Stanley Correctional Institution under the RLUIP because he claims they destroyed his drawing of a swastika, which he claims without elaboration is part of his religion.  The court granted leave to proceed against two of the officers.

In Case No. 09-cv-138, Hoeft claims that in 2003 his state probation agent and a federal Forest Service employee falsely imprisoned him and violated his *Miranda* rights. The court has granted Hoeft leave to proceed on these claims.

From this cursory overview, one could draw differing conclusions. First, Hoeft's winless streak so far is based as much on his unwillingness to pay filing fees as the merits of his early cases.[3] Looking at matters from Hoeft's perspective, he has been chronically mistreated, manhandled, marginalized and ignored by state and federal actors in virtually every interaction with them in virtually every location, and now it's time to balance the ledgers. From the state's perspective, Hoeft has collected, magnified and litigated every bad thing that he thinks happens to him at the hands of any state actor. From the court's perspective, it is too early to pass judgment: although the court noted in some of its leave-to-proceed orders how tenuous Hoeft's claims were, nonetheless the court did not dismiss them because at the pleading stage all doubts must be resolved in Hoeft's favor.

So what happens now? Does Hoeft have the right to launch nine wobbly lawsuits against state actors at virtually no cost to himself in time, money or inconvenience and then barricade himself in Park Falls against the state's efforts to get real-time answers to its questions while scrutinizing Hoeft's demeanor and body language? *See. e.g., Clayton v. Velociti, Inc.*, 2009 WL 1033738 at *5 (D. Kan. April 17, 2009)("Depositions by telephone, particularly of parties, deprive the opposing party of the opportunity to evaluate the nonverbal responses and demeanor

---

[3] Unwillingness to pay as opposed to inability because in each of these cases the court required only partial initial payment after applying a standard formula to Hoeft's financial situation. By waiting to file his current lawsuits until his release from prison, Hoeft was able to obtain in forma pauperis status without being subjected to the PLRA's requirement of installment payments.

of the witness and deny the opportunity for face-to-face confrontation"). But does the state have the right to notice nine separate depositions for Hoeft and require him to make nine separate nine-hour round trips to Madison in a clunker? *See id.* (a specific showing of hardship tied to an individual's circumstances supports a telephonic deposition); *see also Jahr v. IU Int'l Corp.*, 109 F.R.D. 429, 431 (M.D.N.C. 1986) (purpose of Rule 30(b)(7) is to reduce the cost of federal litigation and there is no reason to impose harsh or unusual requirements before permitting telephonic depositions); *Mikola v. Penn Lyon Homes, Inc.*, 2008 WL 2050807 at *1 (M.D. Penn. 2008) (desire to depose witness in person simply to observe his or her demeanor, without more, doe not amount to good cause for denying a request to conduct a telephonic deposition); *Brown v. Carr*, 236 F.R.D. 311, 312 (S.D. Tex 2006) ("Generally, leave to take depositions by telephone should be granted liberally").

Whether the burden of establishing hardship is light or heavy, Hoeft has met it. Each trip to Madison for a deposition will involve at least nine hours of travel. Without underestimating the importance of a party's demeanor while testifying–especially a party with as short a fuse as Hoeft–this is not a sufficient reason to require him to appear in person for a video deposition in this lawsuit. It is necessary to look past Hoeft's rudeness and sense of entitlement in order to determine what the discovery rules require under these circumstances. It also is important to keep in mind Rule 1's direction to strive toward the just, speedy and inexpensive determination of all proceedings. Therefore, I will allow Hoeft to appear telephonically for his depositions in this case and his other pending cases.

But there are two tradeoff for this accommodation: first, Hoeft must cooperate in every reasonable way with the state in scheduling and conducting telephonic depositions in this case

and every other case he has pending. Hoeft must make himself available to be deposed promptly upon request. As with any other deposition witness, although Hoeft has the right to make objections to preserve his record, Hoeft nevertheless must truthfully and completely answer all questions put to him except those that invade a legally recognized privilege. Hoeft may not unilaterally end a deposition, nor may he insist on more than a reasonable number of breaks of reasonable lengths.

Second, from now through the end of this lawsuit and every other lawsuit Hoeft has pending in this court, Hoeft must cease his disrespect toward the assistant attorney generals, the defendants and the witnesses. He must not bait, ridicule, mock, threaten or insult them. If Hoeft is unsure where the line is, then he'd better play it safe.

If Hoeft violates either section of this aspect of the court's order, then he forfeits his right to telephonic depositions and faces additional sanctions that could include dismissing claims or lawsuits depending on the egregiousness of any violations. The flipside of this coin is that the assistant attorney generals must show the same respect to Hoeft that they now will receive from him and they must not use the possibility of sanctions as an opportunity to end his cases early by pressing his buttons. This does not mean that the parties cannot advocate their positions zealously but it means that they must do so within the limits of the rules and the bounds of common courtesy.

ORDER

It is ORDERED that defendant's motion to compel, dkt. 8, is DENIED and plaintiff's motion to be deposed telephonically, dkt. 11 is GRANTED, for the reasons and in the manner stated above.

Entered this 2nd day of October, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge